**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TOMAS PEREZ, as attorney-in-fact for his
parents ELIGIO and DALIA PEREZ, and on
behalf of all those similarly situated,

      Plaintiff,

v.                                                                    CASE NO:  8:16-CV-830-T-30AAS

JACOBSEN MANUFACTURING, INC.
d/b/a JACOBSEN HOMES and PLANT
CITY HOUSING, LLC.,

      Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion to Remand (Dkt. 20) and Defendants' Responses in Opposition (Dkts. 35, 36).  The Court, having reviewed the motion, responses, and being otherwise fully advised in the premises, concludes that the motion should be granted.  Accordingly, this action will be remanded to the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida.

### Background

Plaintiff Tomas Perez, as attorney-in-fact for his parents, Eligio and Dalia Perez, and on behalf of all those similarly situated, filed the instant action in state court, alleging that Defendants Jacobsen Manufacturing Inc. ("Jacobsen") and Plant City Housing, LLC ("PCH") violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

Specifically, Plaintiff alleges that his parents purchased a defective manufactured home from PCH.  The subject home was defective because it did not contain exterior coverings made with moisture and weather resistive materials as required by the National Manufactured Housing Construction and Safety Standards Act ("NMHCSSA").  Plaintiff contends that the manufacturer of the subject home, Jacobsen, installed vinyl siding directly to the oriented strand board, which served as the exterior walls.  According to Plaintiff, the vinyl siding was not "moisture and weather resistive materials attached with corrosion resistant fasteners to resist wind, snow and rain" as required by 24 C.F.R. §3280.307(a).  Moreover, Jacobsen failed to install any moisture and weather resistive "housewrap," or any other moisture and weather resistive materials to prevent moisture from getting in the wall assembly.

Plaintiff alleges that "[s]ince the summer of 2014, the Manufactured Home has suffered from moisture and water damage, including mold, mildew, and structural damage." (Dkt. 2).  Plaintiff also alleges that Defendants have "failed and/or refused to replace or remediate the exterior wall coverings of the Manufactured Home, to bring it into compliance with the requirement of 24 C.F.R. §3280.307(a) that "[e]xterior coverings shall be of moisture and weather resistive materials attached with corrosion resistant fasteners to resist wind, snow and rain."  *Id.*  Plaintiff contends that Defendants' actions were unfair and deceptive because Defendants falsely represented to their customers that the manufactured homes complied with federal regulations like 24 C.F.R. §3280.307(a).

On April 6, 2016, Jacobsen timely removed this case, asserting that this Court has original jurisdiction over this action under federal question jurisdiction because Plaintiff's

FDUTPA claims require "resolution of a substantial question of federal law in dispute between the parties." (Dkt. 1).

On April 29, 2016, Plaintiff timely moved to remand. Plaintiff argues that, although the FDUTPA claims are premised on Jacobsen's violation of a federal HUD regulation, the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction.

As explained below, the Court concludes that it does not have subject matter jurisdiction over this action because Defendants have not shown that the federal issues in this case are substantial. Defendants also have not shown that recognizing federal question jurisdiction over this case would not disrupt the balance struck by Congress between state and federal judicial responsibilities.

### Discussion

## I.    Legal Standard

"It is axiomatic that the jurisdiction of the federal courts is limited, with its scope defined by the Constitution and by statute." *B, Inc. v. Miller Brewing Co.,* 663 F.2d 545, 548 (5th Cir. 1981). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case[.]" *Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir. 2001). "On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1343 (11th Cir. 2009). Removal jurisdiction exists only if the federal district court could

have exercised original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). To meet its burden, the removing party must prove, by a preponderance of the evidence, the facts supporting federal jurisdiction. *See McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.*

In determining whether federal question jurisdiction exists under 28 U.S.C. § 1331, a court must look to the well-pleaded complaint alone. *See Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152 (1908). Pursuant to that rule, a case may be removed based on federal question jurisdiction only when the plaintiff's statement of his own cause of action shows that it is based on federal law. *See Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.,* 182 F.3d 851, 854 (11th Cir. 1999) (citing *Mottley*, 211 U.S. at 149).

## II.    Substantial-Federal-Question Jurisdiction

Although Plaintiff's complaint alleges causes of action that arise under only state law, Defendants argue that federal question jurisdiction nonetheless is proper under the substantial-federal-question jurisdiction doctrine. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Notably, this doctrine applies to only a "slim category" of cases. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006), *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296 (11th Cir. 2008); *see also Gunn v. Minton*, 133 S.Ct. 1059, 1065 (2013). In *Gunn*, the Supreme Court

clarified the appropriate standard to apply as follows: "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S.Ct. at 1065.

## III.    Analysis

Plaintiff's claims raise a disputed federal issue because, to prove a violation of FDUTPA, Plaintiff must first establish a violation of 24 C.F.R. §3280.307(a). However, the Court concludes that the federal issue involved is not substantial. *See Empire Healthchoice*, 547 U.S. at 701 (noting federal courts have rejected the expansive view that mere need to apply federal law in a state law claim will suffice to open the "arising under" door); *Adventure Outdoors*, 552 F.3d at 1300 (concluding that the disputed federal issue was not substantial despite the fact that the jury would need to apply federal law in a state-law claim). As noted in *Adventure Outdoors,* "[t]he Seventh Circuit recently emphasized this distinction between factual and legal issues," in *Bennett v. Southwest Airlines Co.,* 484 F.3d 907, 910 (7th Cir. 2007), when it found a state tort claim concerning an aviation accident presented "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law." *Adventure Outdoors,* 552 F.3d at 1299; *see also Singh v. Duane Morris LLP,* 538 F.3d 334, 339 (5th Cir. 2008) (no federal question jurisdiction where "federal issue [did not involve] resolution of an important question of law," but was "predominantly one of fact"). In finding an absence of substantiality in *Adventure Outdoors,* the Eleventh Circuit stated:

> In our view, [the plaintiffs'] allegation of fraudulent inducement does not amount to an argument about the meaning of federal law.... If this case were to reach trial, resolution of the plaintiffs' claims ultimately would require an evaluation of this factual argument. To be sure, the jury would have to apply federal law to reach its decision. But as the Supreme Court explained in *Grable,* the federal courts have rejected the "expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door."

*Adventure Outdoors,* 552 F.3d at 1300 (quoting *Grable,* 545 U.S. at 313).

The Eleventh Circuit's analysis in *Adventure Outdoors* applies here. The federal aspect of 24 C.F.R. §3280.307(a) is not the kind of substantial federal issue that would give this Court jurisdiction over Plaintiff's FDUTPA claims. Interpretation of 24 C.F.R. §3280.307(a) is not the central issue in this case, and the crux of the dispute will inevitably focus on the facts surrounding the type of exterior covering that was used in the subject homes and whether that covering consisted of "moisture and weather resistive materials." The case also will require the disputed factual issue of whether Defendants acted in an unfair and deceptive manner. Simply put, the parties may hotly contest the terms "moisture and weather resistive materials," but the application of these terms to the materials Jacobsen used on the subject homes involves a highly factual analysis that does not merit federal question jurisdiction.

Defendants attempt to analogize this case to *Grable*: they argue, in relevant part, that all of the elements set forth in *Grable* are met. To the contrary, a close reading of *Grable* reveals the differences between this case and *Grable*, which presented one of the rare instances where a federal issue was necessarily raised. The plaintiff, Grable, filed a state law

quiet title claim because, five years prior to the suit, the Internal Revenue Service ("IRS")

seized the plaintiff's land to satisfy a tax deficiency and then sold the land to the defendant.

Grable argued that the defendant's title to the subject land was invalid because the IRS sold

the land without giving sufficient notice to Grable, as required by federal law.  The Supreme

Court held that the issue of what notice was required under federal law was an "essential

element" of Grable's quiet title claim.  Importantly, the meaning of the federal statute was

actually in dispute and appeared to be the only legal or factual issue contested in the case.

Also, once the pure issue of law was settled, it would govern numerous tax cases.  545 U.S.

at 311.

Notably, one year later, the Supreme Court limited *Grable* in *Empire Healthchoice*,

where the Court rejected the argument that an insurance plan's reimbursement claim, based

on an insured's recovery of damages in a state court tort action, qualified for federal

treatment under *Grable.  See* 547 U.S. at 699 ("[t]his case, we are satisfied, does not fit

within [that] special and small category").  The Court highlighted several factors dispositive

of its finding of federal jurisdiction in *Grable* and noted that these factors were not present

in *Empire Healthchoice*:

> This case is poles apart from *Grable*.  The dispute there centered on the
> action of a federal agency (IRS) and its compatibility with a federal
> statute, the question qualified as "substantial," and its resolution was
> both dispositive of the case and would be controlling in numerous other
> cases.... *Grable* presented a nearly "pure issue of law," one "that could
> be settled once and for all and thereafter would govern numerous tax
> sale cases."  In contrast, [the insurance plan's] reimbursement claim ...
> is fact-bound and situation-specific.

547 U.S. at 700-01.

Here, Plaintiff's claims do not hinge on the interpretation of a single federal statute. The dispute in this case is also between private parties. And, as previously stated, the outcome of the claims will necessarily turn on the particular facts of the case; in other words, the FDUTPA claims are "situation-specific."[1] Defendants speculate that this case will have controlling impact on numerous other cases because, for Plaintiff to prevail, the "Court will be required to interpret construction standards that are not specifically outlined in the NMHCSSA," *see* Dkt. 36, but Defendants fail to deliver any real support for this claim. In any event, any state court interpretation of 24 C.F.R. §3280.307(a) will not be controlling in numerous other cases because it will not have "precedential effect in the federal system." *Adventure Outdoors*, 552 F.3d at 1301.

In sum, the conduct at issue in this case does not present the kind of "pure issue of law" present in *Grable* "that could be settled once and for all" with a decision by this Court. *Empire Healthchoice*, 547 U.S. at 701. This case does not belong to the "special and small" category of cases contemplated by *Grable*.

Finally, even assuming the presence of a substantial federal issue, Defendants' request for the exercise of federal jurisdiction fails because it would unnecessarily disrupt the state-

---

[1] For these same reasons, Defendants' reliance on *Ayres v. General Motors Corporation*, 234 F.3d 514 (11th Cir. 2000) misses the mark. In *Adventure Outdoors*, the Eleventh Circuit recognized the limited nature of its holding in *Ayres*, noting that *Ayres* "involved two levels of federal questions" and required the court "to construe independent bodies of federal law and to determine the legal effect of the interaction of those two bodies of law." 552 F.3d at 1302.

federal division of judicial labor.  In *Grable*, the Supreme Court stated that "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto," because "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction."  545 U.S. at 313-14.  If this case remains in federal court, the Court "might as well set out the welcome mat" for any and every state FDUTPA claim premised upon a violation of a federal statute, rule, or regulation.  *See Meyer v. Health Mgmt. Assocs., Inc.*, 841 F. Supp. 2d 1262, 1272 (S.D. Fla. 2012) (concluding that a claim under the Florida Whistleblower Act that involved a violation of federal law properly belonged in state court); *see also Adventure Outdoors*, 552 F.3d at 1302 ("[B]y authorizing the exercise of federal jurisdiction here, we would open the doors of the federal courts in this circuit whenever a defamation defendant accuses a plaintiff of violating federal law.").  This Court declines to put out the welcome mat under these circumstances.

It is therefore **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion to Remand (Dkt. 20) is granted.

2. Defendant Plant City Housing, LLC's Motion to Dismiss (Dkt. 31) is terminated from pending status.

3. The Clerk of Court is directed to remand this case to the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, and provide that court with a copy of this Order.

4.      The Clerk of Court is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on June 15, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to</u>:
Counsel/Parties of Record

*S:\Even\2016\16-cv-830-remand-grant-20.wpd*